**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| MEENU B., | § | |
|     "Petitioner," | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:26-cv-00350 |
| FRANCISCO VENEGAS, *et al.,* | § | |
|     "Respondents." | § | |

## <u>ORDER</u>

Before the Court is "Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction" (Dkt. No. 7) ("TRO"), Respondents' "Response to Petition for Writ of Habeas Corpus and Motion to Dismiss" (Dkt. No. 12) ("Response"), and "Petitioner's Response Brief in Opposition to Government's Motion to Dismiss" (Dkt. No. 16) ("Reply"). For these reasons, the TRO (Dkt. No. 7) is hereby **GRANTED in part**.

## I.    BACKGROUND

Petitioner is a citizen of India, who is subject to a removal order that became final on December 4, 2000.[1] Dkt. No. 7-1 at 3; Dkt. No. 12 at 2. On the same day, an Immigration Judge ("IJ") granted Petitioner an order withholding her removal to India. Dkt. No. 7 at 3. Respondents subsequently released Petitioner, but without any form of supervised release or functional equivalent. Dkt. No. 7-1 at 3. On March 17, 2026, Petitioner was detained for the first time in 25 years. *Id.* at 4. She claims she was not provided with any explanation about the circumstances that precipitated the need for detention. Dkt. No. 7-2 at 2.

## II.    LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (3) that greater injury will result from denying the temporary restraining order than if it is granted; and (4) that a temporary restraining order will

---

[1] Petitioner waived her appeal on December 4, 2000, the same day the IJ issued her removal order. Dkt. No. 1-2 at 302. Under 8 C.F.R. § 1241.1(b), that waiver made the removal order administratively final as of that date.

not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

## III.   DISCUSSION

Petitioner's claim that her detention violates the Due Process Clause of the Fifth Amendment merits emergency relief. Dkt. No. 7-1 at 9.

First, there is a substantial likelihood that Petitioner will succeed on the merits of this point. 8 U.S.C. § 1231 generally governs the detention and release of aliens subject to a final order of removal. When an alien subject to detention under § 1231 is released, that release and any subsequent revocation of it is typically governed by 8 C.F.R. §§ 241.4 and 241.13. These regulations permit ICE to re-detain an alien "if, on account of changed circumstances" it is determined that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. §241.13(i)(2). Among other things, the regulations require notice "of the reasons for the revocation of his or release," and "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). As this Court recently articulated in *Doe v. Lyons*, 1:25-cv-00350 (S.D. Tex. Mar. 26, 2025), these regulations establish important procedural safeguards for aliens facing re-detention following release. Petitioner is in an unusual legal position.: Respondents invoke § 1231(a)(6) to justify Petitioner's detention yet seek to deny her these protections because she was never formally placed on an order of supervision. *See* Dkt. No. 12.

Assuming without deciding that §§241.4 and 241.13 do not formally apply, the Court cannot read § 1231(a)(6) to authorize re-detention while dispensing with the baseline protections that ordinarily limit that authority. To hold otherwise would allow Respondents to lower the procedural floor for similarly situated detainees based on Respondents own oversight.

To assess which procedures would satisfy the minimum requirements of due process in that context, the Court is guided by the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).[2] The three *Mathews* factors are 1)"the private interest that will be affected

---

[2] Relying on *Dusenbery v. United States*, 534 U.S. 161, 168 (2002), Respondents contend that applying the *Mathews* test is improper because the Supreme Court has "never viewed Mathews as announcing an all-embracing test for deciding due process claims." Dkt. No. 12 at 7. Certainly, *Mathews* is not a one-size-fits-all test for every due process question raised in the civil immigration context. But where the governing statute contemplates procedural protections, and Respondents seek to dispense with that protection based on its own omission, the circumstances warrant a careful assessment of what

2

by the official action"; (2)"the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3)"the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Here, Petitioner has an interest in being free from imprisonment, and she was afforded no procedural protection before the government detained her, increasing the risk of an erroneous deprivation of her liberty. Such risks are particularly important where, as here, Petitioner was arrested and detained for no discernable reason, with no identified change in circumstance bearing on the likelihood of removal, and with no country identified that she could even be sent to despite the IJ's order withholding her removal to India. *See* Dkt. Nos. 7 & 12. As to the third factor, Respondents' legitimate interest in effectively carrying out orders of removal would not be undercut by offering baseline procedural safeguards like notice and an informal interview. This conclusion is confirmed by the fact that Respondents provide these processes in the normal course when re-detaining similarly situated aliens under 8 C.F.R. §§ 241.4 and 241.13. Petitioner's arrest and detention without any form of notice or opportunity to respond likely violates her due process rights. Petitioner is thus likely to succeed on the merits of her due process claim against Respondents.

The remaining factors for emergency relief similarly weigh in favor of granting the TRO because Petitioner would continue to suffer irreparable harm from continued detention. The balance of the equities and public interest also favor Petitioner. While Respondents have an interest in lawful deportation, Respondents do not raise, and the Court cannot find a reason to believe providing Petitioner with the process they routinely provide to aliens under similar circumstances would amount to an undue burden.

## IV.    CONCLUSION

For these reasons, Petitioner's TRO (Dkt. No. 7) is **GRANTED in part**. Respondents are **ORDERED** to release Petitioner. Respondents are further **ENJOINED** from re-detaining Petitioner until they have provided her with notice of the reasons for re-detention and an

---

process is due. In this setting, *Mathews* provides the appropriate framework for evaluating whether the process afforded to Petitioner was constitutionally sufficient.

opportunity to respond, in an informal interview, to the reasons for re-detention. Respondents are further instructed to continue with the custody review as encouraged by the Magistrate Judge's "Order to Provide Status Updates on Administrative Proceedings" (Dkt. No. 13) unless Respondents determine that re-detention is no longer warranted. This Temporary Restraining Order shall expire at **5:00 p.m. CST on Wednesday, May 13, 2026,** or by Order of the Court.

Signed on this 30th day of April 2026.

Rolando Olvera
United States District Judge

4